v. Auto-Drill, Inc. Mr. White. May it please the Court. My name is Greg White and I represent Auto-Drill, Inc. in this appeal. We often hear that the phrase that fraud vitiates all that it touches. And so it is here in this case. The fraud appears in the jurisdictional question that the Court is considering. It affects the limitations issue that has been briefed heavily by the parties, and fraud abrogates the contractual terms that the parties agreed to in settlement. What we have are jury findings that I'll remind the Court. Five of them, after approximately a little bit more than a week of trial, Auto-Drill did not breach the settlement agreement. Second, the jury found zero damages to NOV in its contract claims. The jury found that NOV committed fraud. The jury found that Auto-Drill should have known of the fraud on October 21, 2011. And the jury found $5 million in damages to Auto-Drill. The District Court granted a judgment as a matter of law in favor of NOV. And there were two main reasons, two rationales that the Court gave for doing that. First, the Court said that the fraud claim that resulted in the $5 million in damages had been released by the settlement agreement. It also said that the fraud claim was barred by limitations, a statute of limitations, four years in Texas. It also, in that same set of rulings, denied recovery to NOV on its contract claims, just as the jury had done, so affirming that part of the verdict. Today, we're asking the Court to reverse and render and put the jury verdict back in place, that Auto-Drill was defrauded, that it should be awarded the $5 million. There is an alternative in our briefing, and we'll stand on our brief there. It has to do with the summary judgment that the Court granted and that we thought was wrong, but I'm not sure we have enough time to go through all of that. I wanted to take up the jurisdictional issue, because I think it when the Vikas case came out, which was after all that occurred in the I think Judge Smith would have said the anarchy that came up, I felt we were compelled to raise that for the Court so we could take that up. Vikas was one where the parties settled a case, and in the dismissal order, the Court said, I will retain jurisdiction to enforce the settlement. When that settlement fell apart, the parties reopened the original case, and that's where the Court said, the District Court always has the power to reopen a case to enforce its decrees, but it can't go further than enforcing the decrees so any other tort claims that come up between the parties are going to have to have a separate basis for jurisdiction. That's not what happened here. Judge Snyder, of course, heard that the parties had settled and in the dismissal order, Judge Snyder said I'm going to dismiss and I retain jurisdiction for disputes related to the agreement and to interpret and enforce it. That language is different, and I think different enough for the Court to immediately say well, these things, that the settlement agreement was allegedly breached according to NOV and that the defense to the breach was fraud on the part of auto drill came within the terms of that reservation of jurisdiction. We do have another difference with VCAS because the original case that Judge Snyder entered the dismissal in was not reopened. It started off as a new case, and a new case with non-diverse parties over a breach of contract is not a Federal case unless it has a hook for jurisdiction like the retention language that Judge Snyder put in his order. The retention hook you're focusing on is the addition of the word interpret primarily. And disputes. I retain jurisdiction to resolve disputes and to interpret and enforce. That would be the only differences. But there's another way to analyze this, and I hope we explained it well in our brief. It's a little bit complicated, but let me walk through it a little bit. When the lawsuit was filed by NOV, you breached the settlement agreement, you didn't make the payments, we're going back to Judge Snyder and we're going to enforce this agreement. At that time, there was another case pending in Waco, Texas, between those two parties. And that case said that NOV violated a patent that was owned by Autodrill. It was not the same patent. 172 is the new number, and I hope I do the lingo right on that. The 142 was originally in dispute. So the 172 patent. Well, chaos ensues and we don't want it to be in Waco, so it should be transferred to Texarkana. All this stuff is going on up to the Federal Circuit on Mandamus demanding that the transfer happen. Judge Snyder puts the case that he has, NOV v. Autodrill, on the enforcement of the settlement on stay, waiting for the Federal Circuit to issue its opinion. By that time, the case had been moved to Houston. And in Houston, it sat with a claim for breach of patent, or infringement of patent, I'm sorry. And the defense that NOV put in against the infringement was, you released the claim in the 2011 deal. The response by Autodrill to, you released the claim in the 2011 deal, was, you defrauded me in the 2011 deal. And yet the jury finding says you knew before that deal was confected. Should have known. And that's really key. Should have known. I think that the parties, I mean, NOV's position was, we did not actually know until February of 2015 when a federal court case came out of Austin that affirmatively said that the paperwork that NOV was asserting gave it the right to the 142 patent did no such thing. And that NOV was not the owner of the patent and never had been. I have a question. Tell me how to fix all this. A party signed in two capacities. He signed the agreement for, on behalf of, I forget the exact name. FARCO and NOV, does that help? Yes. And that was the person, the entity that actually did own the patent, as it turns out, right? As it turns out. And that agreement says explicitly signed by a representative that can bind the owner of the patent. We will not ever sue you for using the patent or claim patent infringement. You're entitled to use it. What impact does that have on this case? It seems to me it has a huge impact on this case. Well, let me put our position this way. If you look at the beginning of the agreement, it does not say this is an agreement between... Why was that in there? Okay. Can I step back? I can't tell you exactly why without giving you a little bit of history. Because when the parties begin to negotiate settlement, you'll find this, and you might make a note at 15258 through 15272. It's about 20 pages followed. You said that you wanted them in it. We said we wanted them in it. And they said no. If you want them in it, why don't we just get this litigation? You also said wait. Why don't you wait? We'll resolve it all. Well, the resolution was we can wait for the court to rule on your motion that seeks to find us not the owner of the patent. Well, I mean, that's always the risk of litigation, right? Do you want to settle now before everything's resolved? Or do you want to wait for a resolution which is going to be unfavorable to somebody, right? Somebody's got to lose. And so the settlement occurred in that context. And NOV certainly raised a doubt. I'm sorry. Autodrill raised a doubt that NOV was the true owner of the patent. And NOV supplied these documents that it said were absolute proof that it did. They were the exact same documents it raised eventually in the Austin case where it was eventually determined that those were insufficient to be any kind of transfer of ownership. Now, back to Judge Richman's question. So is the inclusion of the VARCO people important? Well, VARCO is not a party to the settlement agreement. It is not at the beginning of the thing said that VARCO, the true owner of the patent, is a part of the settlement. The settlement agreement, you can search through the whole thing and look for something that VARCO is obligated to do. Isn't that because VARCO is just a pure shell? It has no assets. It has no employees. It was totally absorbed except for this international tax residual quality. We can say all that now, but that's not what's being told to us. Well, it seems to me, and I could be wrong here, this is kind of like a guarantee situation. It's analogous. Here's the parent company or another company. I thought it firmly said VARCO agrees. It will not sue. You can use the patent. It's signed by somebody that's authorized to buy in VARCO. And so why is that more like a guarantee agreement in the bank? Well, maybe I'm blind to this judge because I do not believe there's anything in the settlement agreement that says VARCO also agrees that it will not sue for the patent. I believe that language is totally missing. I think that you are correct in one sense, that it looks like at the end where VARCO signs that it's kind of a countersign or a guarantee. And it would be nice if that had happened because it would solve some problems. But, of course, that is not what that signature says. That signature looks like it's just added to the end of it. There is nothing in there. If they weren't, how is the full indemnity promise from the parent, NOVLP, not sort of what the district court was saying, that you had no damages? Because even if anyone ever had sued you, it would have been VARCO, whatever VARCO is. But then you did get, didn't you get full indemnity as to any suit? Well, I mean, what we have here is that nothing actually happened that would have triggered it. But what we do know But you paid for and got a full indemnity, so you had no exposure if there had been a suit, right or wrong? Well, that's left to be determined because what we know is when NOV said we are the owner of the patent and we warrant, we have not transferred this claim to anyone else, we know that they had no legal capacity, power, rights to do that. And so whatever promise we got from them is absolutely worthless. You say that, but VARCO said you get to use it and whatever claim we have, we're not going to ever come back against you for using it. So your client got to use the patent. No one ever challenged that they Okay, you say that VARCO said that, but that's not what they said. It's not in the agreement that VARCO agrees to the license. NOV granted the license. And so if I looked at it from our position, NOV, to whom we paid somewhere in the neighborhood, and I'm rounding here with $750,000, we had a double risk that if VARCO actually came in and claimed that we were violating and we paid the wrong people, we would be relying on this one document that has no language that VARCO agrees to do anything. That VARCO licenses the patent here What was the district court's actual finding on this issue? VARCO as a party to the contract? Well, the district court simply said that we had received what we had bargained for. That was the ability to use it. That sort of pushes me back to, you did get the indemnification agreement. So where's the error in that? That's not what we bargained for. We bargained for a real license. And we were told that we were dealing with the person that had the right to grant the license. And that was not true. And so all of the things that happened, and we sued for this and damage calculations were made based on this, was we litigated from 2009 to 2011 with somebody who claimed to own the patent and did not. Before you settled, you filed elsewhere saying they actually don't own it. Didn't you? Isn't that why the jury came to its finding? It was an affirmative claim. The 2011 thing was a motion to dismiss in that very case. And so it was there that we said we doubt that they own it, and that was what was pending when we settled it. Can I take a few minutes to talk about the limitations thing, or do we need to? I'll talk as long as you want to about whatever you want. Well, we only reach that if you're persuasive that ficus doesn't apply, correct? Well, that's true. So I guess the issue you haven't touched at all and we've asked you questions and have been helped a lot by the answers is would you agree that the jury finding as to fraud doesn't equate to a fraud on the court, that the scienter standard behind it would be one of knowledge or recklessness as opposed to willfully misleading? The jury's finding that fraud was committed, I think has this going on. There were claims for fraud during the litigation 2009 to 2011, fraud in the inducement to do that, and there was the effect of the fraud that was visited on auto drill from 2011 to 2015 by those payments. Let me refine the question. Where would you point to in the record the clearest example of willfully misleading the court? What's the clearest example in the record? That they were in the best position to know who owned the patent and they said that they did and they didn't. That's willfully misleading the court. Unconscionable, egregious. Yes, and we say in the brief, it's not really a standard that says that there must be something like close to criminal type intent in order for the court to take action based on that. And I think that also has a relation back to the Vicus thing. If you were going to say that the argument here, just because time is running out, was we thought at the time of the settlement agreement, we thought it was ours. You know, and I hear people saying that, but there's no document that supports that in any way, shape, or form. No document. May it please the Court, I'm Tanya Dawson here on behalf of Applee National Oil Well in Varco. And Your Honors, if I might start with addressing a question that you asked Mr. White. In the settlement agreement, NOB agreed on behalf of itself and Varco not to bring any claim or causes of action against autodrill related to the 142 patent. So in answering the question that you posed, Your Honor, NOB and Varco both agreed to release any claims against autodrill related to the 142 patent in the 2011 settlement agreement. I may have misremembered and overstated what it says. It did not say that Varco grants a license to autodrill, does it? Yes, Your Honor. Well, it says NOB agrees on behalf of itself and Varco and grants a license to autodrill as well as autodrill's customers to full use of the 142 patent. And then the settlement agreement was signed by Varco. And it's important to note that autodrill is the party who insisted that Varco be named in this settlement agreement. Because the question as to ownership They did want Varco named as a party to the agreement originally and you resisted. Yes, Your Honor. And that's because you thought you were Varco. Yes, Your Honor. And yet, subsequently, it's determined legally, no they're not. They still have a separate existence. At least as to no explicit mention of patent 142. Correct. Correct. So in 2009 when the suit was filed, all the way to 2011 when the settlement agreement was entered, the only evidence before the trial court was that every single person at NOB, including those who were directly involved in the transfer of assets from Varco to National Oil Well Varco sincerely believed, and it was their intent and purpose, that all assets including the 142 patent had been transferred. But the Federal Circuit has decided that for us. Correct. We were wrong. The Federal Circuit decided we were wrong and that decision was rendered two years after the patent expired. True, but then Varco wasn't bound. Varco was bound by this settlement agreement because Varco signed the settlement agreement in addition to NOB. Both NOB and Varco executed this settlement agreement. Another thing that I want to raise is appellate says a great deal talking about the statute of limitations issue. However, the order entered by the district court granted summary judgment on behalf of NOB against Auto Drill and its fraud claims not on statute of limitations. That was mere dictum. That was the equivalent of an advisory opinion. The district court dismissed Auto Drill's fraud claims on the basis of Auto Drill's disclaimer reliance. But you're actually telling us antecedent to that, we should affirm the dismissal because there was no jurisdiction. Yes, Your Honor. And that's actually where I wanted to start my argument, but I wanted to answer your questions that you had raised to previous counsel. As this court has held standing as a threshold issue for federal jurisdiction, the parties can never consent to federal subject matter jurisdiction. In March of 2017, when Auto Drill filed a motion for summary judgment asking the district court to affirm the findings of the Omron court and find that NOB did not in fact own the 142 patent, the district court in ruling that NOB did not own the 142 patent in 2009 divested itself of jurisdiction. Because if NOB did not own the patent in 2009, NOB lacked standing under Article III. That's a subject matter attack on the entire case. On the entire case. But the obvious response is you can't collaterally attack what you had an opportunity to assert right then and there. And that was never made on appeal from that ruling. Well, Your Honor, at the time that the ruling was entered and the appeal process had been waived, there was no knowledge on anybody's part that NOB did not own the patent. And the Royal Insurance case that they rely upon is completely distinguishable. NOB as the plaintiff in the case had no reason to challenge the jurisdiction or its own standing in the 2009. Royal doesn't turn on plaintiff, does it? In the Royal case In other words, motivation isn't the same as opportunity. The law says, did you have the opportunity to challenge it? And you didn't. But Royal also talks about a party challenging a judgment, an adverse judgment against it. In this case this was not an adverse judgment against NOB. This was a dismissal entered by both parties at the request, dismissal entered by the court on the request of the parties. NOB, Autodrill raised the issue of ownership of the 142 patent. Correct. Fully briefed it in October of 2011. Autodrill chose to abandon that argument. And if you'll recall in the briefing, when the parties reached an agreement, they reached the terms of the settlement agreement on Halloween of 2011. There was still a question being raised by Autodrill whether or not NOB owned the 142 patent. NOB's counsel offered to Autodrill, we'll stay this. We've already got in writing, we've got an effective Rule 11 agreement under Texas law that it is an enforceable settlement. We had agreed to the terms. The only thing at issue was what party's name would go into the contract. Autodrill said no. Had Autodrill taken NOB up on this offer and won its motion to dismiss, the case would be over. Autodrill would not be obligated to enter into a settlement agreement because the court would have found that NOB did not have standing to bring the lawsuit then and there. Instead, Autodrill made a conscious effort to proceed with the settlement agreement. And in that settlement agreement, the parties expressly disclaimed any reliance on any representations by either party leading into the settlement agreement. What's particularly important is the fact that and the district court was correct in ruling that the disclaimer of reliance in the settlement agreement was binding on Autodrill. And the facts of this case in particular are even stronger than the facts of the Schlumberger v. Swanson case. And the Schlumberger v. Swanson case But the relevant time of filing is when you said they breached by non-payment the last three installments. Yes, sir. At the time there was jurisdiction. At the time there was jurisdiction. And when NOB filed its breach of contract case, the court had jurisdiction to enforce its order. And that is set forth in the Vickas case and in the Transport Astor case. Okay, but I understand it. So then the subject matter jurisdiction attack you're making is narrowed to the fraud claim. That's Vickas. Yes, Your Honor. Not the whole case. Well, arguably if NOB, so it's multi-layered. So if NOB did not have standing to bring the first lawsuit in 2009, then the trial court did not have jurisdiction to enter the order dismissing the case and retaining jurisdiction to enforce. In order to have ancillary jurisdiction, you must have primary jurisdiction. But you had the opportunity then to say no so one way of looking at it is you can't collaterally attack it now and yet as to separately, Vickas does mean that the district court wouldn't have had jurisdiction over the fraud claim. Yes, Your Honor. So we are not, our position is that we are not collaterally attacking the first judgment in 2011. However, even if this court determines that the trial court had jurisdiction over the 2009 case to enter the ruling in 2011, the Vickas case makes very clear that the power to enforce and interpret an agreement is just that. Although it didn't say interpret. You're saying to enforce you have to interpret. No, so actually in the TransCore Astra case, the court noted, quote, an important distinction exists between claims that relate to an agreement's enforcement and those that relate to its enforceability. End quote. Another quote is enforcement means the act of compelling compliance with an agreement. The power to enforce a settlement is just that. It is not a power to reach all related claims and theories of recovery. It is not the power of a court to reach claims related to fraud or fraudulent inducement even where that fraud could have related to the terms of the settlement agreement. And so the Vickas case, excuse me, the TransCore Astra case also included language similar to what we have here where the trial court retained jurisdiction to interpret and enforce the settlement agreement. What about his point that the language is a little broader, not settlement agreement, but all sort of related disputes to the settlement agreement? Well, and that's where the TransCore Astra case says that the court does not have jurisdiction to address other torts. Each separate tort requires its own independent basis for jurisdiction. And this, the tort that Otto Drew is asserting here, their fraud claim is nothing more than a state law claim between two non-diverse citizens for which the federal court did not have jurisdiction to entertain. Isn't it a compulsory counterclaim? Your Honor, it's not a compulsory counterclaim because this is an effort to undo the settlement agreement. Someone's sitting on the settlement agreement and the defense to that is it's unenforceable. Yes, but the Texas Supreme Court in TransCore Astra said that retaining jurisdiction to enforce a settlement agreement does not extend to efforts by a party to that agreement to undermine the enforceability of it. Is that binding on federal? I'm sorry, Your Honor? Is that state law or federal? This is Texas, this is Texas Supreme Court. But, all right, we'll sort it out. Okay, so with regard to the settlement agreement, in addition to the fact that the district court did not have jurisdiction to entertain Otto Drew's fraud claim because it did not fall within the district court's retained jurisdiction to enforce its orders, the district court correctly ruled that Otto Drew had released all of its claims of fraud, including their claims for fraudulent inducement, when it executed the 2011 settlement agreement. The case of Schlumberger v. Swanson is particularly instructive here. In Schlumberger, the court set forth five factors that must be considered. First, whether or not the terms of the contract were negotiated, i.e., whether it was a boilerplate agreement or something that the parties negotiated. The evidence before the trial court was that there were multiple iterations of the settlement agreement back and forth between Otto Drew's and NOV's counsel to determine exactly what words would be included in this settlement agreement. Not only and the other issue was whether or not the parties specifically discussed the issue that now forms the basis of the fraudulent inducement claim. That issue is ownership of the 142 patent. Not only was the ownership of the 142 patent discussed between Otto Drew and NOV's counsel in drafting the terms of this settlement agreement, it was fully briefed twice by Otto Drew before the court dismissed this case. Otto Drew declined NOV's offer to wait until the trial court ruled on the motion to dismiss and insisted on the settlement agreement. In the settlement agreement, there are multiple specific releases by Otto Drew of its claims related to fraudulent inducement. There is a specific release by Otto Drew of all assertive claims raised or that could have been raised, section 6A. In section 6C, there is a general release of all claims that were or could have been raised. In section 6A, there is a warranty by Otto Drew that it released all claims with full knowledge that any and all potential claims with respect to the 142 patent. In 6C, Otto Drew again firmly represented that they fully assumed the risk that the facts or law may be otherwise than believed or understood. In section 7, Otto Drew made an affirmative representation that it relied solely upon its own judgment. Again in section 7, Otto Drew made the affirmative representation that it had not been influenced by any representation by NOB. And again, in section 7, in two different areas, Otto Drew stated that it relied solely and completely on its own judgment. I'm just sorry. There are a lot of moving pieces here. Yes, Your Honor. Your argument right now is that suggesting to us that your request for a judgment of law was incorrectly denied because, in fact, you didn't breach. The release was comprehensive. Or am I mixing? It's mixing, too, if I may. So our position is that the district court was correct in dismissing Otto Drew's claim on the basis of the disclaimer and the release language, and that is fully supported by the Schlumberger v. Swanson case and the Forrest Oil case. Our position is also that the district court erred in assessing sanctions against NOB for finding a fraud on the court and dismissing NOB's breach of contract claim as finding a fraud on the court. The only evidence before the district court was that everyone at NOB genuinely and honestly believed that all of the paperwork and documentation necessary to effectuate the transfer of all assets from National Oil Well and from VARCO to National Oil Well VARCO had been completed. There was absolutely no evidence from which the trial court could decide that NOB committed a fraud on the court. Did the district court cite to the Western District of Texas' suggestion that it had been bad faith, or to the federal circuit? I mean, three separate federal courts have said highly questionable litigating conduct. Your Honor, NOB was sanctioned in the Omron case for its actions in that case. This court in the district... What happened in the federal circuit? The federal circuit just affirmed what was done in the Omron court out of Austin. But noted a pattern of highly questionable... With regard to this one issue, what's important is that none of these things that will form the basis of the Omron court's opinion occurred in the Eastern District of Texas. The Omron case was filed... I mean, the ruling in the Omron case came down in 2015, years after the Eastern District of Texas case was over. The only thing that occurred in the Eastern District of Texas was that NOB brought a suit to enforce what it believed was its 142 patent. That suit proceeded. Autodrill on the eve... At the end of the case raised a question of NOB's ownership of the patent. Fully briefed it. Autodrill chose, instead of getting a ruling on that, to settle the case and get a dismissal. That was it. And even in the trial that we had a couple years ago in Texarkana, the only evidence presented at the trial was that everyone at NOB acted in good faith. When National Oil Well Varco obtained all of the assets of Varco and National Oil Well, all employees were transferred to National Oil Well Varco. The testimony at trial was that the company spent hundreds of millions of dollars rebranding its patented products, including the product that used the 142 patent. All of the buildings were renamed. All of the employees were switched. The taxes were being paid by National Oil Well Varco. Varco exists, unbeknownst to any of the people involved in the lawsuit, only as a shell company for international tax purposes. So it was not a fraud on the court. What's more, the courts have held that in order... Even if it weren't that argument, the district court... Are you defending the district court's conclusion that there were no damages? In other words, they paid how much money for the license? They paid over $700,000, but there were damages because the undisputed testimony at trial was that Autodrill was contractually obligated to pay $900,000 and that Autodrill still owed $246,000 on that contract with no excuse. Autodrill's founder offered no explanation for failing to honor the terms of the contract other than his testimony, which was admitted over objection on a final issue that the contract was void if there was a misrepresentation, if it was induced by fraud. So James Ray was allowed to testify over objection that the settlement agreement was void if it was procured by fraud based on the fraudulent inducement theory that Autodrill advanced at the trial court. That is the only basis for the jury's determination that Autodrill did not breach the contract because Autodrill's owner took the stand and testified without hesitation that he did not make the final three payments. And so what happened... It's a fact. He admits, I did not honor all terms of the contract. And there's no justifiable basis for that. And so the undisputed evidence at trial was that Autodrill breached the contract. It did not make the final three payments. The trial court then used its inherent authority to issue death penalty sanctions against NOV on this breach of contract claim. The trial court found on the basis of fraud on the court. However, in order to establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Only the most egregious conduct, such as bribery of a judge or jury, the fabrication of evidence by an attorney will constitute fraud on the court. Less egregious conduct, even nondisclosure to the court of facts pertinent to the case, will not ordinarily rise to the level of fraud on the court. And that was a Fifth Circuit opinion in First National Bank of Louisville. There was absolutely no evidence to support a fraud on the court finding against NOV in 2021 for statements that were made by NOV in 2009 where all of the evidence showed that those statements were made in good faith. Your Honor, we are asking this court first to dismiss the appeal with lack of jurisdiction. If the court finds that there is jurisdiction, we ask to affirm the district court's finding of dismissal on Autodrill's fraud claims based on the disclaimer of reliance provisions, the multiple disclaimers of reliance in the settlement agreement. We're also asking this court to reverse the sanction based on NOV's fraud on the court and to reverse and render a judgment in favor of NOV on its breach of contract claim. With 30 seconds, could you just speak to the indemnity? Am I correct that even if VARCO's not a party, that NOV agreed to indemnify? Yes, Your Honor. NOV agreed if anybody, including VARCO, ever sued Autodrill with anything related to a 142 patent, NOV contractually agreed to fully indemnify and defend Autodrill for any such claim. Thank you very much. I want to address the idea that in 2011 and up to 2015, all the evidence was that they genuinely, honestly, and in good faith believed that they were the owners of the patent. Nobody has to accept that as a credible explanation for their decision to pursue lawsuits, multiple ones, claiming a patent they did not own. They can testify, and did, that they honestly believed it. But every time that claim was made, every court rejected it. They said, look at these papers you are claiming support the idea that you own it. They're your papers. And your papers say you don't own it. If anybody is in a position to understand what that means, it would be you. And you, NOV, have been telling people something that's not true. Your protestations that you honestly believed it, that you in good faith wanted it to be that way, that you intended it to happen, is not supported by what you actually did. So the fact that people get up and protest their innocence doesn't mean that a court has to believe it, nor that a jury has to believe it. Secondly, there is a claim that the settlement agreement has a disclaimer of reliance provision on it. It does not. It has disclaimers of representations, which are distinct from a Schlumberger, Forrest Oil, Italian Cowboy, IBM versus Lufkin. Talk about it. Disclaimer of reliance clause says, I, as one party to this agreement, hereby agree that I will never claim that I relied on any representation you made to me. It is not, I never heard a representation. Those fall under the general Texas law that those kind of statements can be set aside if there is fraud. And we can go to, all the way back to Dallas Farm machinery case in the 40s, and we can take that up to the current date and find that Texas has always said that you can say that you don't receive a representation when in fact you did. Well, as I recall, Schlumberger, that was the Diamond Mine case. Right. They bargained over what representations went into and out of the agreement. I mean, in these big deals, money changes hands on what's in volume J or whatever, warranties and representations. Right. And so, that was what my recollection is that Schlumberger was trying to get at. That when parties bargain over what goes into representations and what doesn't, and then the other parties say, I did not rely on any representations other than what's in here. Yes. And there was already an outstanding dispute about whether. They were fighting over those values. Exactly. So, I don't understand how you can say that the settlement agreement didn't, this disclaimer didn't address that. Well, because the subsequent Texas cases to Schlumberger made clear that the kind of disclaimer of reliance clause that will cause a fraud claim to disappear is one that says, I disclaim reliance, not disclaim the existence of representations. And they made that clear because it is far too easy to make the kind of contractual clauses that you just heard read in detail, too easy to make those. And they are always capable of being set aside by fraud. The ones that cannot are the ones that say, I didn't rely on them. And Schlumberger is followed by Forrest Oil, that is followed by IBM versus Lufkin. And they all say, that must be clear and unequivocal that you are disclaiming reliance on the representations that have been made. Because it's a dangerous clause. It's one of those that can just be thrown in and all of a sudden you can defraud somebody. So the Court is very careful, the Supreme Court of Texas, very careful to say it must be clear and unequivocal that you are disclaiming reliance on the representations that are being made to you and that it must be negotiated. And they don't mean negotiation about the topic, they mean negotiation about the clause for disclaimer of reliance. And you'll see that in Forrest Oil and Italian Cowboy. It's not negotiating what the parties are agreeing to. That's relevant. But when they say you must specifically negotiate, they mean specifically negotiate for a disclaimer of reliance clause. And that's what's missing here. So there is the possibility of confusion about disclaimers of representation and disclaimer of reliance and the Texas Supreme Court has made them clear and we've given you the citations to those cases. If there's no further questions, I'll sit down.